UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARVIN BROWN, : | |
| Plaintiff : | |
| : | CIVIL ACTION NO. 3:13-0094 |
| v. : | |
| : | (JUDGE MANNION) |
| STANLEY BOHINSKI, et al., : | |
| Defendants : | |

**MEMORANDUM**

**I.   Background**

Plaintiff, Marvin Brown, an inmate confined in the State Correctional Institution, Dallas ("SCI-Dallas"), Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (See Doc. No. 1). On September 30, 2013, Plaintiff filed an amended complaint. (Doc. No. 22). He names as Defendants the following SCI-Dallas employees: Corrections Activities Manager Edward Salerno, Nurse Jane Doe, and Physician's Assistant John Doe. The Plaintiff also sues the late Dr. Stanley Bohinski, who was employed by PHS/Corizon as the medical director at SCI-Dallas.

Presently before the Court is a motion to dismiss filed on behalf of Defendant, Corrections Activities Manager Edward Salerno. (Doc. No. 25). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion to dismiss will be granted. Additionally, the remaining Defendants will be dismissed from this action, and the case will be closed.

## II. **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588

2

F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed Appx. 183 (3d Cir. 2008).

**III.     Allegations in Amended Complaint**

On September 18, 2011, while playing basketball in the prison yard, Plaintiff alleges that he "broke [his] ankle and limped back to [his] housing unit to report the incident and seek medical care by reporting such to C.O. John Doe, whom stated after observing [Plaintiff's] injury, 'Mr. Brown, it's Sunday, go to sick call on Monday morning'." (Doc. No. 22, at 2). Plaintiff states claims that "although [he] disagreed, [he] followed his instructions." Id.

On September 19, 2011, Plaintiff signed up for sick call and was seen by Nurse Jane Doe, "whom observed [his] ankle injury that was extremely swollen and black and blue." Id. Plaintiff was treated with "approximately 10 aspirin, and one ace bandage, and a set of crutches for walking purposes." Id. Nurse Doe then told him she would schedule him for x-rays. Id. Plaintiff claims that he requested a stronger pain medication but his request was denied. Id. As Plaintiff was leaving the medical department, he saw Defendant, Dr. Bohinski. (Doc. No. 22, at 3). He asked Dr. Bohinski if he could be admitted to the hospital because he was "in a lot of pain and [his] ankle was possibly broken." Id. Dr. Bohinski "personally felt [his] ankle and stated 'it could possibly be broken, but lets 'wait for x-rays'." Id. Plaintiff then returned to his housing unit "with the assistance of [his] crutches" to await the x-rays. Id.

On September 22, 2011, Plaintiff's ankle was x-rayed by SCI-Dallas medical staff. Id. Plaintiff claims that SCI-Dallas has a policy of only scheduling

4

x-rays once a week. Id.

On September 26, 2011, Plaintiff was "summoned to the sick call area and informed by Nurse Jane Doe that the original x-ray of [his] ankle was lost" and "new x-rays were scheduled." Id. Plaintiff states that he "politely explained to Nurse Jane Doe at sick call that [he was] in terrible pain since the injury and [he] needs some pain medication, but [he] was denied pain meds during the entire time awaiting x-rays." Id. Plaintiff was then informed by Physician Assistant John Doe that his rescheduled x-ray would be on September 29, 2011. (Doc. No. 22, at 4).

Plaintiff alleges that the September 29, 2011 x-ray results "caused [him] to be taken to a private doctor's office named Orthopedic Consultants of Wyoming Valley on October 5, 2011", where Plaintiff was seen by Dr. Michael C. Raklewicz. Id. Plaintiff's ankle was again x-rayed because the September 29, 2011 x-rays were not sent with him. Id. While waiting for the x-ray results, Plaintiff states that Dr. Raklewicz was reading Plaintiff's injury report and "immediately became angry" and inquired of Plaintiff as to why he told SCI-Dallas that his injury occurred yesterday, October 4, 2011, "because his professional observation/experience lead him to believe the injury was at least two weeks old." Id. Plaintiff informed him that it was not his fault and that the prison had just arranged the visit. Id.

Dr. Raklewicz informed Plaintiff that "because of the inordinate delay he

would have to re-break [his] ankle for reconstruction surgery because the ankle had begun healing" and that "a little break had turned into a major operation." (Doc. No. 22, at 5).

On October 8, 2011, Plaintiff states that he had "major reconstruction surgery on [his] broken ankle," which he believes "clearly could have been avoided if [he] would have received adequate medical care on September 18, 2011." Id. After the surgery, Plaintiff states that "Dr. Raklewicz ordered Plaintiff to have re-hab," which Plaintiff "believed involved bicycle therapy that [he] never received," in spite of sending "numerous request slips to Mr. Salerno" to attend the "re-hab special needs gym." Id. Although Plaintiff claims that he was "eventually informed there is no longer a special needs gym at SCI-Dallas" he does indicate that he "received one day of re-hab therapy pursuant to Dr. Raklewicz by being taken to SCI-Waymart." (Doc. No. 22, at 6).

On January 14, 2013, Plaintiff filed the instant action in which he claims that "because of the medical malpractice at SCI-Dallas [he is] unable to have full usage of [his] ankle and [he] believes [he] is pertmentally (sic) deformed." Id. For relief, Plaintiff seeks compensatory and punitive damages, as well as "a preliminary and permanent injunction ordering the Defendants medical staff to discontinue delaying x-rays of injuries to once a week and omission of out practitioner order to have physical therapy." Id.

## IV. Discussion

### A. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a non-physician defendant cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the

8

inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The allegations in Plaintiff's complaint clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff was seen within one day of injuring his ankle on the basketball court and, was provided with medication, an ace bandage, and a set of crutches. Additionally, x-rays were taken of the injury, and as soon as the prison medical personnel realized that his injury required further treatment, they referred Plaintiff to an outside orthopedic consultant, where he received the necessary surgery to correct his injury. At best, Plaintiff's complaint demonstrates his disagreement with medical personnel. Though he may have wished that the SCI-Dallas

9

medical staff had transferred him to an outside physician sooner, his disagreement with the course of action that they took based on the symptoms he presented, is not enough to state a §1983 claim. Sample v. Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105–06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)).[1] This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. Thus, the allegations in the Plaintiff's complaint amount to Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable constitutional claim. See White, 897 F.2d at 108-110.

---

[1] Even holding Plaintiff's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Brown does not suggest that the Defendants were aware that there was an excessive risk to his health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004) (stating that while a pro se complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it).

Moreover, non-medical Defendant, Corrections Activities Manager Edward Salerno is to be dismissed, as this Defendant cannot be found deliberately indifferent to Plaintiff's medical needs when Plaintiff was admittedly under the continual care of the prison medical staff. Durmer, 991 F.2d at 69. See also Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D.Pa.2001) (Prison officials "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." (Citing Durmer, 991 F.2d at 69 n. 14)); Newton v. Reitz, 2009 WL 233911(M.D.Pa. Jan. 30, 2009) ("the United States Court of Appeals for the Third Circuit held in Durmer that a non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff.") (Citing Durmer, 991 F.2d at 69). Moreover, to the extent that Plaintiff claims that he submitted request slips to Defendant Salerno to attend the "therapy special needs gym", Plaintiff himself admits that he was "informed there is no longer a special needs gym at SCI-Dallas". (See Doc. No. 22, at 6). Thus, any claim for denial of medical care against Defendant Salerno should be dismissed.

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint

unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3rd Cir.2002). Since it is clear from Plaintiff's complaint, that Plaintiff received medical treatment through his transfer to an outside facility on October 5, 2011, and merely disagrees with the treatment he received during this time, the Court finds that amendment on these claims would be futile.

### B. John/Jane Does

John and Jane Doe defendants may only be allowed "to stand in for the alleged real parties until discovery permits the intended defendants to be installed." Johnson v. City of Erie, 834 F.Supp. 873, 878 (W.D.Pa.1993) (citations omitted). Absent compelling reasons, a district court may dismiss such defendants if a plaintiff, after being granted a reasonable period of discovery, fails to identify them. Scheetz v. Morning Call, Inc., 130 F.R.D. 34, 37 (E.D.Pa.1990) ("Fictitious parties must eventually be dismissed, if discovery yields no identities.").

Based on this Court's review of the record, despite the filing of this action in January 2013, Plaintiff has not yet provided this Court with the identities of Defendants, Nurse Jane Doe or Physician Assistant John Doe. Thus, under the standards announced in Sheetz, entry of dismissal in favor

of John and Jane Doe Defendants is appropriate.[2]

### C. Stanley Bohinski, D.O.

On April 11, 2014, Defendants filed a suggestion of death, indicating that Defendant, Stanley Bohinski, D.O. died on February 19, 2013. (Doc. No. 31). Because the suggestion of death was served on Brown more than ninety (90) days ago and Brown did not substitute a representative for Bohinski's estate in accordance with Rule 25(a)(1)[3] of the Federal Rules of Civil Procedure, the Court will dismiss the complaint as it relates to Defendant Bohinski.[4]

---

[2]Although Defendants Jane and John Doe have never been served with the complaint, and no response has been filed on their behalf, based on the above discussion, the Court finds that these Defendants are also entitled to dismissal pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

[3]Fed.R.Civ.P. 25(a)(1) states in relevant part as follows:
> If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

[4]Alternatively, based on the above discussion, the Court finds that any claims against Defendant Bohinski are also entitled to dismissal pursuant to 28 U.S.C. §1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted.

## V. <u>Conclusion</u>

For the reasons stated above, Defendant Salerno's motion to dismiss will be granted. Remaining Defendants, Jane and John Doe and Stanley Bohinski, D.O, will also be dismissed from the above captioned action. An appropriate order shall issue.


                            s/ *Malachy E. Mannion*
                            **MALACHY E. MANNION**
                            **United States District Judge**

Dated: **August 7, 2014**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-0094-01.wpd